UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 16-cv-25254-MARTINEZ

ANTHONY KING,

     Plaintiff,

v.

AKIMA GLOBAL SERVICES, LLC,

     Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Plaintiff's Motion for Partial Summary Judgment, (ECF No. 130). After careful consideration, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Partial Summary Judgment.

I.    **RELEVANT FACTUAL BACKGROUND**

The following pertinent facts are undisputed unless otherwise noted. When the facts are in dispute, they are taken in light most favorable to Defendant Akima Global Services, LLC, the non-movant. *See Chapman v. Am. Cyanamid Co.*, 861 F.2d 1515, 1518 (11th Cir. 1988).

Plaintiff Anthony King is a Black, Muslim, American man who was employed as a Detention Officer at the Department of Homeland Security's Krome Service Processing and Detention Center ("Krome") by Doyon-Akal ("Doyon") from July 2009 to June 2014. (Joint Statement of Undisputed Facts ("JSUF") ¶ 1, ECF No. 127; Plaintiff's Statement of Material Fact ("Pl.'s SOMF") ¶ 4, ECF No. 131; Def.'s Statement of Undisputed Material Facts ("Def.'s SOMF") ¶ 2, ECF No. 128.) In 2014, Defendant Akima Global Services, LLC was awarded a

contract by Immigration Customs Enforcement to provide security and other services at Krome, replacing Doyon. (JSUF ¶ 3, ECF No. 127; Pl.'s SOMF ¶ 5, ECF No. 131; Def.'s SOMF ¶ 3, ECF No. 128.) Doyon provided Defendant with a list of incumbent employees to assist Defendant in hiring employees to start working at the end of the transition period between the two companies on July 1, 2014. (JSUF ¶¶ 3, 5, ECF No. 127; Def.'s SOMF ¶¶ 3, 5 ECF No. 128.) Doyon's incumbent employees were, however, required to apply and interview for a position with Defendant. (JSUF ¶¶ 7–10, ECF No. 127; Pl.'s SOMF ¶ 7, ECF No. 131; Def.'s SOMF ¶ 9, ECF No. 128.)

Plaintiff applied for a job and interviewed with Defendant in May 2014. (Pl.'s SOMF ¶ 5, ECF No. 131; Def.'s SOMF ¶ 3, ECF No. 128.) On or about May 8, 2014, Mike Burklow, Defendant's then-Director of Human Resources, interviewed Plaintiff in person. ((JSUF ¶ 11, ECF No. 127; Pl.'s SOMF ¶ 8, ECF No. 131; Def.'s SOMF ¶ 21, ECF No. 128.) What occurred at that interview is disputed. (*See* Order Summ. J. 2, ECF No. 157.) Mr. Burklow recommended that Plaintiff be hired as a Detention officer. (*Id.*; Def.'s SOMF ¶ 29.) Ultimately, Defendant's then-General Manager Laura Mitchell chose not to hire Plaintiff. (JSUF ¶ 13, ECF No. 127; Pl.'s SOMF ¶ 9, ECF No. 131; Def.'s SOMF ¶ 48, ECF No. 128.) The reason for Ms. Mitchell's decision is disputed. (Order Summ. J. 3, ECF No. 157.)

On October 3, 2014, after receiving notice from Defendant of its decision not to hire him, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") alleging discrimination based on race, religion, and national origin. (JSUF ¶ 15, ECF No. 127; Pl.'s SOMF ¶ 11, ECF No. 131; Def.'s SOMF ¶ 59, ECF No. 128.) Plaintiff received a Right to Sue letter from the EEOC on September 9, 2016. (Pl.'s SOMF ¶ 12, ECF No. 131; Pl.'s SOMF Ex. F, at 2, ECF No. 131-6.) On October 24, 2016, Plaintiff filed this action in Florida State

Court against Defendant alleging three claims under the Florida Civil Rights Act of 1992 for: (1) intentional race discrimination (Count I); (2) national origin discrimination (Count II); and (3) religious discrimination, (Count III). (JSUF ¶ 16, ECF No. 127; Pl.'s SOMF ¶ 13, ECF No. 131; Compl. 6–15, ECF No. 1-2.) Defendant, on December 19, 2020, timely removed this action to federal court. (Notice Removal, ECF No. 1.)

On August 18, 2021, the Court issued its Order on Summary Judgment, (ECF No. 157), granting in part and denying in part Defendant's Motion for Final Summary Judgment, (ECF No. 129). Plaintiff now moves for partial summary judgment as to certain affirmative defenses asserted by Defendant because they are "legally not applicable or without any factual supporting basis." Pl.'s Motion Partial Summ. J. 1, ECF No. 130.) Specifically, Plaintiff moves for summary judgment on Defendant's affirmative defenses numbered 1–7, 9, 12, and 15. (*Id.*)

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if "the depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , or other materials . . . show . . . that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). Summary judgment is appropriate, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The moving party bears the initial burden to show, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *accord Kol B'Seder, Inc. v. Certain Underwriters at*

*Lloyd's of London Subscribing to Certificate No. 154766 Under Cont. No. B0621MASRSWV15BND*, 766 F. App'x 795, 798 (11th Cir. 2019). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608. When the moving party has carried its burden, the party opposing summary judgment must do more than show that there is "metaphysical doubt" as to any material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Indeed, Rule 56 "requires the nonmoving party to go beyond the pleadings and, by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, *designate specific facts showing that there is a genuine issue for trial*." *Celotex Corp.*, 477 U.S. at 324 (emphasis added); *Kol B'Seder, Inc.*, 766 F. App'x at 798. "For issues, however, on which the non-movant would bear the burden of proof at trial, 'the moving party is not required to support its motion with affidavits or other similar material *negating* the opponent's claim in order to discharge this initial responsibility.'" *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–16 (11th Cir. 1993) (quoting *United States v. Four Parcels of Real Prop. in Green & Tuscaloosa Cntys. in the State of Ala.*, 941 F.2d 1428, 1437–38 (11th Cir. 1991)). "Instead, the moving party simply may show . . . that there is an absence of evidence to support the non-moving party's case . . . ." *Id.* (quoting *Four Parcels of Real Prop.*, 941 F.2d at 1437–38).

At summary judgment, the Court must view the evidence and draw inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus.*, 475 U.S. at 586; *Chapman*, 861 F.2d at 1518. "All reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant." *Chapman*, 861 F.2d at 1518. "However, an inference based on speculation and conjecture is not reasonable." *Id.* (citing *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985)). "Speculation does not create a *genuine* issue of fact;

instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *See Matsushita Elec. Indus.*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 270 (1968)). The inquiry is,  therefore, whether "reasonable jurors could find by a preponderance of the evidence that the [party with the burden of proof] is entitled to a verdict . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Chapman*, 861 F.2d at 1518.

## III.   ANALYSIS

"Partial summary judgment may properly be granted on affirmative defenses." *Gentre Hill Cts. Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, No. 19-cv-80111-BLOOM/Reinhart, 2020 WL 442467, at *7 (S.D. Fla. Jan. 28, 2020) (quoting *Tingley Sys., Inc. v. HealthLink, Inc.*, 509 F. Supp. 2d 1209, 1218 (M.D. Fla. 2007)). "An affirmative defense admits the facts of the complaint and asserts additional facts in justification or avoidance of a claim." *Biscayne Cove Condo. Ass'n, Inc. v. QBE Ins.*, 951 F. Supp. 1292, 1305 (S.D. Fla. 2013) (citing *Morrison v. Executive Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1319 (S.D. Fla. 2005)).

The Court turns to each of the challenged affirmative defenses in turn:

### A.   *First Affirmative Defense*

Defendant asserts the following as its first affirmative defense: "The Complaint should be dismissed, in whole or in part, for failure to state a claim upon which relief can be granted." (Def.'s First Am. Answer 7 ¶ 1, ECF No. 89.)

Plaintiff asserts that Defendant's first affirmative defense is legally inapplicable and, because Defendant never moved to dismiss the Complaint, procedurally barred. (Pl.'s Mot. Summ.

J. 3, ECF No. 130.) In response, Defendant largely argues that Plaintiff's Motion for Partial Summary Judgment is a time-barred motion to strike Defendant's affirmative defenses masquerading as a motion for summary judgment. (Def.'s Resp. Opp'n Pl.'s Mot. Summ. J.4–5, ECF No. 140.) It is true that, as Defendant States, motions to strike disguised as motions for summary judgment are inapt. *See Andreu v. Hewlett-Packard Co.*, 15-23270-CIV-MORENO/O'SULLIVAN, 2016 WL 1697088, at *4 (S.D. Fla. Apr. 20, 2016). In *Andreu*, the court found that the plaintiff's motion was more appropriately taken as a motion to strike because the plaintiff cited extensively to case law involving motions to strike affirmative defenses; cited to Federal Rule of Civil Procedure 12(f), which governs motions to strike; and "made no attempt to comply with the rules governing summary judgment motions." *Id.* at *3–4. Here, while Plaintiff cites cases involving motions to strike affirmative defenses in its argument in favor of summary judgment as to Defendant's first affirmative defense, that trend does not continue throughout the motion, and support from a few cases involving motions to strike do not a motion to strike make. *Cf. id.* at 3–5. Plaintiff also complied with the rules governing motions for summary judgment. *Cf. id.* The Court, therefore, does not accept Defendant's invitation to take Plaintiff's Motion for Partial Summary Judgment as a motion to strike.

Defendant makes a second, more compelling, argument, however. Defendant argues that the Court should view Defendant's first affirmative defense as a general denial. The Court agrees. "A defense which points out a defect in the Plaintiff's *prima facie* case is not an affirmative defense." *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988). Such an affirmative defenses is treated "as a specific denial." *Pujals ex rel. El Rey De Los Habanos, Inc. v. Garcia*, 777 F. Supp. 2d 1322, 1328 (S.D. Fla. 2011); *accord Biscayne Cove Condo.*, 951 F. Supp. 2d at 1305; *Centre Hill Cts. Condo.*, 2020 WL 442467, at *8. As the first amended complaint is

"point[ing] out a defect in . . . Plaintiff's *prima facie* case," by asserting that Plaintiff fails "to state a claim upon which relief can be granted[,]" (Def.'s First Am. Answer 7 ¶ 1), the Court treats the first affirmative defense as a specific denial, *see, e.g.*, *Biscayne Cove Condo.*, 951 F. Supp. 2d at 1305.

Thus, Plaintiff's Motion for Partial Summary Judgment as to Defendant's first affirmative defense is DENIED.

### B.   *Second Affirmative Defense*

Defendant asserts the following as its second affirmative defense: "Some or all of Plaintiff's claims may be barred, in whole or in part, by the applicable statute of limitations period." (Def.'s First Am. Answer 7 ¶ 2, ECF No. 89.)

Plaintiff argues that summary judgment as to Defendant's second affirmative defense is appropriate because "there is no genuine issue of material fact that [Plaintiff's] claim was brought within the applicable statute of limitations period." (Pl.'s Mot. Summ. J. 4, ECF No. 130.) In response, Defendant states that "so long as no other evidence is introduced that would call this evidence into question, then it appears the lawsuit was timely." (Def.'s Resp. Opp'n Pl.'s Mot. Summ. J. 6, ECF No. 140.)

To timely state a claim under the Florida Civil Rights Act of 1962, Plaintiff must first have filed a claim with the EEOC "within 365 days of the alleged violation . . . ." § 760.11(1), Fla. Stat. (2021). Plaintiff complied with this initial requirement when Plaintiff filed his EEOC charge on October 3, 2014, mere months after Defendant informed Plaintiff that it was not hiring him. (JSUF ¶¶ 14–15, ECF No. 127.) Then, upon receiving notice that the EEOC determined that there is reasonable cause to believe that a discriminatory practice has occurred in violation of the Florida Civil Rights Act of 1962, Plaintiff may have brought a civil action against the person named in the

claim in a court of competent jurisdiction "no later than 1 year after the date of determination of reasonable cause by the commission." § 760.11(4)(a), (5). Here, Plaintiff received a Right to Sue letter from the EEOC on September 9, 2016, (Pl.'s SOMF ¶ 12, ECF No. 131; Pl.'s SOMF Ex. F, at 2, ECF No. 131-6), and filed suit in Florida state court on October 24, 2016—well within the one-year statute of limitations outlined in section 760.11(5), Florida Statutes, (JSUF ¶ 16, ECF No. 127).

Plaintiff, as the moving party, has met the initial burden that "there are no genuine issues of material fact that should be decided at trial." *See Clark*, 929 F.2d at 608. Defendant, therefore, had the burden to "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.; Matsushita Elec.*, 475 U.S. at 586. Defendant has not done so. Instead, Defendant agrees with Plaintiff that there is no material dispute of fact and that, as a matter of law, Plaintiff sued within the statute of limitations period. (Def.'s Resp. Opp'n Pl.'s Mot. Summ. J. 6–7.) Seeing that there are no material facts in dispute and Plaintiff's claim under section 760.11, Florida Statues, is timely, summary judgment is appropriate as to Defendant's second affirmative defense.

Thus, Plaintiff's Motion for Partial Summary Judgment as to Defendant's second affirmative defense is GRANTED.

## C.     *Third Affirmative Defense*

Defendant asserts the following as its third affirmative defense: "Plaintiff's claims are barred, in whole or in part, to the extent that he failed to satisfy jurisdictional prerequisites, and other conditions precedent to bring suit." (Def.'s First Am. Answer 7 ¶ 3, ECF No. 89.)

Plaintiff argues that summary judgment is appropriate as to Defendant's third affirmative defense because "there is no genuine issue of material fact that he satisfied the jurisdictional prerequisites and conditions precedent to bring suit." (Pl.'s Mot. Summ. J. 4–5.) Defendant agrees,

so long as Plaintiff does not make "arguments at trial that go beyond the allegations and bounds of the initial charge of discrimination." (Def.'s Resp. Opp'n Pl.'s Mot. Summ. J. 7.) Here, as discussed *infra*, Plaintiff had to file a claim with the EEOC within one year of the alleged violation of the Florida Civil Rights Act of 1992 and await authorization to file a claim with a court of competent jurisdiction. *See* § 760.11(1), (4)(a), (5). The undisputed facts before the Court are clear: Plaintiff complied with the required jurisdictional prerequisites. (JSUF ¶ 127, ECF No. 127.)

Thus, Plaintiff's Motion for Partial Summary Judgment as to Defendant's third affirmative defense is GRANTED.

### D.   *Fourth Affirmative Defense*

Defendant asserts the following as its fourth affirmative defense: "Plaintiff's claims are barred, in whole or in part, to the extent that they exceed the scope of his Charge of Discrimination." (Def.'s First Am. Answer 7 ¶ 4, ECF No. 89.)

Plaintiff argues that he is entitled to summary judgment on Defendant's fourth affirmative defense because there are no material facts in dispute that Plaintiff's claims fall within the scope of his claim with the EEOC. (Pl.'s Mot. Summ. J. 5, ECF No. 130.) Defendant agrees, but requests that the Court limit Plaintiff to those claims set forth in Plaintiff's claim with the EEOC. (Def.'s Resp. Opp'n Pl.'s Mot. Summ. J. 8, ECF No. 140.) Plaintiff, in his claim filed with the EEOC alleged that Defendant violated the Florida Civil Rights Act of 1992 for failing to hire him on the bases of his race, religion, and national origin. (JSUF ¶ 16, ECF No. 127.) Upon review of Defendant's Motion for Final Summary Judgment, (ECF No. 129), the Court limited Plaintiff's claims to those for discrimination on the bases of his race and religion because Plaintiff failed to state a prima facie case for discrimination based on his national origin, (Order Summ. J. 11, ECF No. 157). So, to the extent that Plaintiff argues at trial that Defendant discriminated against him

9

on the bases of his race or religion—and for no other reason—summary judgment is appropriate as to Defendant's fourth affirmative defense because there is no dispute of material fact that Plaintiff's claims here fall within his claim with the EEOC. As Plaintiff notes in his Reply in Support of Plaintiff's Motion for Partial Summary Judgment, "if either party presents new theories of the case, outside of its pleadings, at trial or otherwise, the Court can deal with that hypothetical scenario at that time." (ECF No. 141, at 4 n.1.)

Thus, Plaintiff's Motion for Partial Summary Judgment as to Defendant's fourth affirmative defense is GRANTED.

### E.    *Fifth Affirmative Defense*

Defendant asserts the following as its fifth affirmative defense: "Some or all of Plaintiff's claims may be barred, in whole or in part, by the doctrine of laches, estoppel, unclean hands, and/or waiver." (Def.'s First Am. Answer 7 ¶ 5, ECF No. 89.)

Plaintiff argues that there are no genuine disputes of material fact that Plaintiff's "claims are not barred by laches, estoppel, unclean hands, or waiver." (Pl.'s Mot. Summ. J. 6–7, ECF No. 130.) Defendant agrees but argues that it "should retain the right to renew its affirmative defense, depending on any additional arguments/evidence submitted by Plaintiff." (Def.'s Resp. Opp'n Pl.'s Mot. Summ. J. 8, ECF No. 140.) Here, the undisputed record evidence before the Court—when taking the evidence in the light most favorable to Defendant as the nonmoving party—shows that (1) laches, (2) equitable estoppel, (3) the unclean hands doctrine, and (4) waiver do not apply here as a matter of law because (1) there is no evidence that Plaintiff's suit was (A) untimely or delayed or (B) prejudicial as a result any delay, *see Equal Emp. Opportunity Comm'n v. Dresser Indus., Inc.*, 668 F.2d 1199, 1201 (11th Cir. 1982) ("Laches is an equitable doctrine designed to prevent unfairness to a defendant due to a plaintiff's delay in filing suit in the absence of an appropriate

statute of limitations."); (2) no record evidence supports the argument that Defendant relied to its detriment on any of Plaintiff's representations as to a material fact contrary to a later-asserted position, *see Ajaka v. Brooksamerica Mortg. Corp.*, 453 F.3d 1339, 1344 (11th Cir. 2006); (3) Defendant has not provided record support that the unclean hands doctrine applies to this matter, despite, *see T.G. v. Sears, Robuck & Co.*, No. 06-61227-CIV-UNGARO-BENAGES, 2006 WL 8432512, at *4 (S.D. Fla. Nov. 20, 2006); *Coquina Invs. v. Rothstein*, No. 10-60786, 2011 WL 4971923, at *15 (S.D. Fla. Oct. 19, 2011); and (4) no record evidence shows that Plaintiff waived any "right, privilege, advantage, or benefit" that may be waived, *see Witt v. Metro. Life Ins.*, 772 F.3d 1269, 1279 (11th Cir. 2014).

Thus, Plaintiff's Motion for Partial Summary Judgment as to Defendant's fifth affirmative defense is GRANTED.

**F.    *Sixth Affirmative Defense***

Defendant asserts the following as its sixth affirmative defense: "Plaintiff's claims are barred to the extent that, if any employee of Defendant acted in a manner that violated Plaintiff's rights and/or caused him harm, any such actions were committed outside the scope or course of the employee's employment and without Defendant's consent, knowledge or ratification." (Def.'s First Am. Answer 7 ¶ 6, ECF No. 89.)

Plaintiff alleges that (1) "there [are] no facts that relate to this affirmative defense" and (2) Defendant conceded as such. (Pl.'s Mot. Summ. J. 7.) Neither proposition holds water. As Defendant states, the record evidence supports that there are genuine disputes of material fact as to (1) whether Defendant's employees, specifically Mr. Burklow and Ms. Mitchell, discriminated against Plaintiff based on his race or religion and (2) if any discrimination against Plaintiff occurred, whether Defendant's employees who discriminated were acting within the scope or

course of their employment with Defendant when they did so. This is because Plaintiff ascribes Defendant's allegedly discriminatory conduct to two individual employees: Mr. Burklow and Ms. Mitchell. A reasonable juror may find, by a preponderance of the evidence, that Defendant's employee or employees acted outside the scope of their employment and that Defendant is, therefore, not liable to Plaintiff. *See Anderson*, 477 U.S. at 249. Because a trier of fact must determine those questions, summary judgment as to Defendant's sixth affirmative defense is inappropriate.

Thus, Plaintiff's Motion for Partial Summary Judgment as to Defendant's sixth affirmative defense is DENIED.

### G. *Seventh Affirmative Defense*

Defendant asserts the following as its seventh affirmative defense: "Plaintiff's claims are barred because Defendant exercised reasonable care to prevent and correct promptly any alleged discriminatory and/or retaliatory behavior, and/or Plaintiff unreasonably failed to take advantage of Defendant's preventative or corrective opportunities to otherwise avoid harm." (Def.'s First Am. Answer 7 ¶ 7, ECF No. 89.)

Plaintiff alleges that, because Plaintiff was not Defendant's employee, Defendant's seventh affirmative defense does not apply to Plaintiff. (Pl.'s Mot. Summ. J. 8, ECF No. 130.) Again, Plaintiff's proposition fails. Defendant points to record evidence to support the proposition that Plaintiff, even as a non-employee could have called a "hotline" where he would have been able to inquire as to the reasons for Defendant's decision not to hire him or attempt to remedy any wrong Plaintiff may have suffered. (*See* Mitchell Dep. 124:6–20, Def.'s SUMF Ex. 2, at 41, ECF No. 128-2.) Plaintiff also testified in his deposition that he never contacted Defendant about its decision not to hire Plaintiff. (King Dep. 116:10–25, Def.'s SUMF Ex. 4, at 25, ECF No. 128-4.) Therefore,

because a reasonable juror could find by a preponderance of the evidence that (1) Defendant made available to Plaintiff preventive or corrective measures, (2) Plaintiff failed to exercise reasonable care in seeking out or using those preventive or corrective measures, and (3) Plaintiff's failure to do so limits or bars any recovery to which Plaintiff may be entitled from Defendant, summary judgment is not appropriate as to Defendant's seventh affirmative defense.

Thus, Plaintiff's Motion for Partial Summary Judgment as to Defendant's seventh affirmative defense is DENIED.

### H.   *Ninth Affirmative Defense*

Defendant asserts the following as its ninth affirmative defense: "Plaintiff's claims may be barred to the extent that discovery shows he engaged in misconduct prior to, during, or in connection with his employment, that otherwise would have resulted in his separation if such conduct were then known to Defendant." (Def.'s First Am. Answer 8 ¶ 9, ECF No. 89.)

Plaintiff argues that Defendant's ninth affirmative defense does not apply to Plaintiff because Plaintiff was not hired as Defendant's employee, and therefore, the after-acquired evidence doctrine does not apply to Plaintiff. (Pl.'s Mot. Summ. J. 8, ECF No. 130.) This, however, is not the case; the inquiry is whether Defendant would not have hired Plaintiff had it known then what Defendant uncovered during discovery. *See, e.g.*, *Thomas v. Home Depot U.S.A., Inc.*, 792 F. App'x 722, 727 (11th Cir. 2019) ("If a plaintiff satisfies his burden of proving unlawful discrimination under Title VII, the employer may assert—as an affirmative defense—that plaintiff's damages are limited by after-acquired evidence that plaintiff misrepresented information on his job application." (first citing *Holland v. Gee*, 677 F.3d 1047, 1065 (11th Cir. 2012); and then citing *Wallace v. Dunn Constr. Co.*, 62 F.3d 374, 379–80 (11th Cir. 1995) (en banc))). The inquiry in failure-to-hire cases is whether the employee would not have been hired

13

had the employer known the information when an employment decision was made. *See id.* at 725–26 ("[W]e see no reversible error in the jury instructions or the jury verdict form. During the jury charge, the district court summarized the parties' respective arguments. In pertinent part, the district court described *accurately* [the defendant's] second affirmative defense: 'that had [the plaintiff] been truthful in the hiring process [the defendant] would not have hired him—would not have offered him the position." (emphasis added)); *Wallace v. Dunn Const. Co.*, 62 F.3d 374, 379 n.8 (11th Cir. 1995) ("[T]he pertinent inquiry, except in refusal-to-hire cases, is whether the employee would have been fired upon discovery of the wrongdoing, not whether he would have been hired in the first instance." (citing *Shattuck v. Kinetic Concepts, Inc.*, 49 F.3d 1106, 1108 (5th Cir. 1995))); *accord Forte v. W. Fla. Med. Ctr. Clinic, P.A.*, 2015 WL 2086231, at *5 (N.D. Fla. May 5, 2015); *Johnson v. Maestri Murrell Prop. Mgmt.*, No. 09-0638, 2014 WL 3512859, at *3 (M.D. La. July 10, 2014) ("Our understanding of the *McKennon/Shattuck* cases is that in a failure to hire [case], the defendant can prove that it would not have hired the individual had it known of the misrepresentations or falsities made in the resume.").

Here, the record evidence when viewed in the light most favorable to Defendant, the non-movant, at the very least supports that a genuine dispute of material fact exists as to whether Plaintiff made material misrepresentations on his job application. Specifically, Defendant asserts that "Plaintiff was questioned during the interview about prior suspensions and whether he had been placed on any type of corrective action within the past" two years, (Def.'s SUMF ¶ 23, ECF No. 128); Plaintiff answered "no" to the question, (*id.* ¶ 24); and Plaintiff's former manager confirmed with Ms. Mitchell that Plaintiff had in-fact had a significant performance- and conduct-related issues with Plaintiff, (*id.* ¶ 39)—although that itself is in dispute, (Order Mot. Summ. J. 12,

ECF No. 157). Whether Defendant would not have hired Plaintiff is a question for a trier of fact to determine.

Thus, Plaintiff's Motion for Partial Summary Judgment as to Defendant's ninth affirmative defense is DENIED.

## I.    *Twelfth Affirmative Defense*

Defendant asserts the following as its twelfth affirmative defense: "The Court lacks subject matter jurisdiction over the Complaint to the extent that Plaintiff is subject to an agreement requiring him to submit his claims against Defendant to binding arbitration. Defendant, by answering the Complaint, does not waive its right to demand arbitration." (Def.'s First Am. Answer 8 ¶ 12, ECF No. 89.)

Plaintiff argues that there are no material facts in dispute that Plaintiff is not subject to an arbitration agreement with Defendant and that summary judgment is, therefore, appropriate. (Pl.'s Mot. Summ. J. 9, ECF No. 130.) As Defendant concedes, "there is no agreement to arbitrate." (Def.'s Resp. Opp'n Mot. Summ. J. 13, ECF No. 140.) The Court, therefore, finds that there is no genuine dispute of material fact, and summary judgment is appropriate.

Thus, Plaintiff's Motion for Partial Summary Judgment as to Defendant's twelfth affirmative defense is GRANTED.

## J.    *Fifteenth Affirmative Defense*

Defendant asserts the following as its fifteenth affirmative defense: "Plaintiff's claims are barred or limited to the extent that they are subject to, or are required to be interpreted consistent with, the federal enclave doctrine." (Def.'s First Am. Answer 7 ¶ 4, ECF No. 89.)

Plaintiff argues that he is entitled to summary judgment on Defendant's fifteenth affirmative defense because there is no genuine dispute of material fact that Krome is not a federal

enclave as a matter of law because Defendant has failed to produce a deed of cession. (Pl.'s Mot. Summ. J. 9–11, ECF No. 130.) Defendant states in response that summary judgment is inappropriate because "there is a *presumption* of exclusive federal jurisdiction over federal enclaves 'unless the deed of cession provides otherwise, or the cession is not accepted in the manner required by law.'" (Def.'s Resp. Opp'n Pl.'s Mot. Summ. J. 14–15, ECF No. 140 (citing *King v. Akima Glob. Servs., LLC*, 775 F. App'x 617, 621 (11th Cir. 2019).) Defendant also states that Plaintiff has the burden to show that Krome is not a federal enclave. (*Id.* at 16.) Moreover, Defendant avers that Krome is a federal enclave because the federal government owns the property by deed from a private party. (*Id.* at 17–18.) Defendant's arguments fail.

Turning to Defendant's first incorrect argument that there is a presumption that a federal enclave exists where there is no deed of cession. (*Id.* at 14–15.) Defendant couches its argument on the Eleventh Circuit's ruling in *King*, but Defendant makes an important semantic error. The Eleventh Circuit's statement of the law, that "[t]he jurisdiction exercised by the federal government over federal enclaves is exclusive unless *the* deed of cession provides otherwise[,]" *King*, 775 F. App'x at 621 (emphasis added), denotes only two interconnected realities: that (1) there must be proof of a cession, and (2) if the federal government's jurisdiction is not to be exclusive, the deed of cession must reveal otherwise. Defendant's argument may have some merit, were the law that "federal jurisdiction over federal enclaves is exclusive unless *a* deed of cession provides otherwise" because "*a* deed of cession" refers to a cession that may but need not exist, while "*the* deed of cession" refers proof of a cession that must exist. But that is not the law. Importantly,

> [t]he power of the Federal Government to acquire land within a State by purchase or by condemnation without the consent of the State is well established. . . . But without the state's "consent" the United States does not obtain the benefits of Art. I, s 8, cl. 17, its possession simply that of an ordinary proprietor. . . . In that event,

however, . . . a State could complete the "exclusive" jurisdiction of the Federal Government over such an enclave by "a cession of legislative authority and political jurisdiction."

*Paul v. United States*, 371 U.S. 245, 264–65 (1963) (citations omitted) (first citing *Kohl v. United States*, 91 U.S. 367, 371 (1875); then citing *James v. Dravo Contracting Co.*, 302 U.S. 134, 141–42 (1937); and then citing *James Steward & Co. v. Sadrakula*, 309 U.S. 94, 99–100 (1937)). To be sure, "Congress can acquire exclusive or partial jurisdiction over lands within a State by the State's consent or cession, [but] . . . 'without more,' *federal ownership of lands within a State does not withdraw those lands from the jurisdiction of the State*." *Kleppe v. New Mexico*, 426 U.S. 529, 543–44 (1976) (emphasis added).

Hence, the important question here is what is the "more" required? To answer this question, the Court turns to the operative sections in the United States Code and Florida Statutes. Section 3112 of Title XL United States Code reads as follows:

### § 3112. Federal jurisdiction

(a)     EXCLUSIVE JURISDICTION NOT REQUIRED.—It is not required that the Federal Government obtain exclusive jurisdiction in the United States over land or an interest in land it acquires.

(b)     ACQUISITION AND ACCEPTANCE OF JURISDICTION.—When the head of a department, agency, or independent establishment of the Government, or other authorized officer of the department, agency, or independent establishment, considers it desirable, that individual may accept or secure, from the State in which land or an interest in land that is under the immediate jurisdiction, custody, or control of the individual is situated, consent to, or cession of, any jurisdiction over the land or interest not previously obtained. The individual shall indicate acceptance of jurisdiction on behalf of the Government by filing a notice of acceptance with the Governor of the State or in another manner prescribed by the laws of the State where the land is situated.

(c)     PRESUMPTION.—It is conclusively presumed that jurisdiction has not been accepted until the Government accepts jurisdiction over land as provided in this section.

40 U.S.C. § 3113. Section 3113 makes clear that the Federal Government must accept jurisdiction by "filing a notice of acceptance with the Governor of the State or in another manner prescribed

by the laws of the State where the land is situated." *Id.* at (b). The Court, then, turns to Florida's cession statute, which reads in pertinent part as follows:

> Whenever the United States shall contract for, purchase, or acquire any land within the limits of this state for the purposes aforesaid, . . . and shall desire to acquire constitutional jurisdiction over such lands for said purposes, the Governor of this state may, upon application made to him or her in writing on behalf of the United States for that purpose, accompanied by the proper evidence of said reservation, purchase, contract, or acquisition of record, describing the land sought to be ceded by convenient metes and bounds, thereupon, in the name and on behalf of this state, cede to the United States exclusive jurisdiction over the land so reserved, purchased, or acquired and sought to be ceded . . . .

§ 6.04, Fla. Stat. Taking these two statutes together, then, the Federal Government must have sought exclusive jurisdiction over Krome by applying to the Governor of Florida with evidence that the Federal Government purchased Krome. *See* 40 U.S.C. § 3112(b); § 6.04, Fla. Stat. Only then would the State of Florida have ceded Krome to the Federal Government. § 6.04, Fla. Stat. To determine whether the State of Florida retained any jurisdiction over Krome at the time of cession, the Court "must look to the deed of cession . . . ." *See King*, 775 F. App'x at 620 (citing *Lord v. Local Union No. 2008, Int'l Bhd. of Elec. Workers*, 646 F.2d 1057, 1058 (5th Cir. 1981)). The record evidence, however, includes no deed of cession or similar document.

Here, because Defendant asserts the federal enclave doctrine as an affirmative defense, Defendant has the burden of proof at trial.[1] *See Fitzpatrick*, 2 F.3d at 1115–16 (quoting *Four*

---

[1] Inexplicably, Defendant attempts to construe the Court's Order on Motion, (ECF No. 124), to mean that "the case was remanded for Plaintiff to obtain discovery to establish the circumstances under which the Krome property was allegedly ceded to the federal government[,]" (Def.'s Resp. Opp'n Mot. Summ. J. 15). Neither *King* nor the Court's Paperless Order Reopening Case, (ECF No. 114), nor the Order on Motion, (ECF No. 124), stand for Defendant's proposition. The Court's Paperless Order Reopening Case expressly states that "*Defendant* shall produce the deed or documentation relevant to cessation of the property *to Plaintiff* within **thirty (30) days** of the date of this Order." (ECF No. 124 (emphasis added).) Moreover, nearly the entire Order on Motion dealt with *Defendant's* burden to produce the deed of cession to Plaintiff. (Order on Mot. 2–4, ECF No. 124.)

*Parcels of Real Prop.*, 941 F.2d at 1437–38). The burden is not on Plaintiff, as Defendant argues. *See id.*; (Def.'s Resp. Opp'n Pl.'s Mot. Summ. J. 16, ECF No. 140.) When reviewing the evidence in the light most favorable to Defendant, the record is clear: Defendant has provided no evidence that Florida has ceded exclusive jurisdiction over Krome to the Federal Government. This is even though Defendant was afforded the opportunity to conduct discovery for multiple years in this litigation as to whether a deed of cession existed between the Federal Government and the State of Florida for Krome. (*See* Order on Mot. 4, ECF No. 124 ("To date . . . over four years after this case commenced and after three extensions in the last year alone, Defendant has still failed to produce the deed of cession. Accordingly, the Court will not permit the issue to lag any longer. . . . In light of the Eleventh Circuit's mandate and pursuant to this Court's February 25, 2020 Order, [(ECF No. 114),] limited discovery was permitted to allow Defendant to provide Plaintiff with a copy of the deed of cession. . . . Defendant has not been able to do so . . . .").)

As Defendant highlights, "the Eleventh Circuit concluded material facts remained as to the circumstances under which Florida ceded the Krome venue to the United States Government and whether Florida had retained jurisdiction over employment matters." (Def.'s Resp. Opp'n Pl.'s Mot. Summ. J. 14, ECF No. 140.) Now, over two years after the Eleventh Circuit's decision in *King*, no material facts are in dispute over whether the State of Florida ceded its jurisdiction to Krome as no deed of cession or similar document is in the record. In fact, as Plaintiff notes, the only proposition that the record supports is that the State of Florida has expressly stated that no deed of cession exists. (Glisson Aff. 2–3, Pl.'s SOMF, Ex. 2, EFC No. 131-2.)[2] While Deputy

---

[2] The Court may properly consider Deputy Secretary of State Dorothy W. Glisson's affidavit because the document was prepared before January 1, 1998, and is a self-authenticating domestic public document that is sealed and signed by an officer of the State of Florida whose signature purports to be an attestation. *See* Fed. R. Evid. 803(16); Fed. R. Evid. 902(1).

Secretary of State Glisson's Affidavit is from 1981, the record evidence—taken in the light most favorable to Defendant—shows that the Federal Government owned Krome well before 1981. (Def.'s Resp. Pl.'s Mot. Summ. J. 17, ECF No. 140.) There was no deed of cession then, (Glisson Aff. 2–3, Pl.'s SOMF, Ex. 2, EFC No. 131-2), just as there is no record evidence of a deed of cession or similar document now. And to be clear, no presumption of exclusive federal jurisdiction, as Defendant erroneously argues, exists. (Def.'s Resp. Opp'n Pl.'s Mot. Summ. J. 14–15, ECF No. 140.) In fact, section 3112 of Title XL United States Code expressly states that "[i]t is conclusively presumed that jurisdiction has not been accepted until the Government accepts jurisdiction over land as provided in this section." 40 U.S.C. § 3112(c). Proof of that acceptance is nowhere in the record before the Court.

The Court, finally, briefly turns to Defendant's last argument. Defendant, relying solely upon the fact that the Federal Government *owns* the property on which Krome sits, asserts that the federal enclave doctrine applies to Krome. (Def.'s Resp. Opp'n Mot. Summ. J. 16–18, ECF No. 140.) What is clear, however, is that property ownership by the Federal Government is not enough to "withdraw those lands from the jurisdiction of the State." *Kleppe*, 426 U.S. at 543–44. The mere fact that the Federal Government owns Krome is not enough for the federal enclave doctrine to bar Plaintiff's Florida law claims against Defendant. *See id.*

The Court finds that there are no genuine disputes of material fact as to whether Krome is a federal enclave—on the record before the Court, it is not. Hence, as a matter of law, Krome is not a federal enclave and the federal enclave doctrine does not bar Plaintiff's claim under the Florida Civil Rights Act of 1992. Therefore, summary judgment in Plaintiff's favor as to Defendant's fifteenth affirmative defense is appropriate.

Thus, Plaintiff's Motion for Partial Summary Judgment as to Defendant's fifteenth affirmative defense is GRANTED in Plaintiff's favor.

## VI.    CONCLUSION

For the foregoing reasons, it is ORDERED and ADJUDGED that:

Plaintiff Anthony King's Motion for Partial Summary Judgment, (ECF No. 130), is GRANTED IN PART and DENIED IN PART as follows:

Summary judgment is GRANTED as to Defendant's affirmative defenses numbered 2, 3, 4, 5, 12, and 15.

Summary Judgment is DENIED as to Defendant's affirmative defenses numbered 1, 6, 7, and 9.

DONE AND ORDERED in Chambers at Miami, Florida, this 8th day of November, 2021.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
All Counsel of Record

21