## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 16-25254-CIV-MARTINEZ/GOODMAN

ANTHONY KING,

     Plaintiff,

v.

AKIMA GLOBAL SERVICES, LLC,

     Defendant.

_____/

### OMNIBUS REPORT AND RECOMMENDATIONS
### ON MOTIONS TO TAX COSTS

Defendant Akima Global Services, LLC ("AGS") seeks $12,519.18 in taxable costs [ECF No. 245] and $14,517.56 in non-taxable costs [ECF No. 248] for successfully defending against Plaintiff Anthony King's discrimination lawsuit at trial. King filed responses in opposition [ECF Nos. 246; 250], and AGS filed optional replies. [ECF Nos. 247; 251]. United States District Judge Jose E. Martinez (the "District Court") referred both motions to the Undersigned. [ECF No. 249].

For the reasons stated below, the Undersigned **respectfully recommends** that the District Court **grant in part** AGS's motion for taxable costs and award it **$6,686.40** ($5,832.78 less than the requested amount) in taxable costs and also **respectfully recommends** that the District Court **deny** AGS's motion to recover non-taxable costs.

I.      **Background**

In October 2016, King filed a civil action in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, alleging discrimination based on race, discrimination based on national origin, and discrimination based on religion. [ECF No. 1, p. 102]. The case was removed to the United States District Court for the Southern District of Florida. [ECF No. 1, p. 102]. In July 2018, AGS was given leave to amend its answer and affirmative defenses to assert the federal enclave defense. [ECF Nos. 88; 89]. The District Court granted AGS's motion for judgment on the pleadings based on the federal enclave defense and dismissed King's complaint with prejudice. [ECF No. 90, pp. 5-7]. On August 1, 2018, the District Court entered a final judgment in favor of AGS. [ECF No. 91]. King appealed this ruling. [ECF No. 92].

During the pendency of the appeal, as the prevailing party, AGS filed a motion for an award of taxable costs in the amount of $3,326.40 for its filing fee, deposition costs, and copy charges. [ECF No. 94]. The Undersigned issued a report and recommendations, recommending that the District Court grant AGS's motion to tax costs. [ECF No. 100]. The District Court adopted the Undersigned's Report and Recommendations and awarded AGS the full requested amount. [ECF No. 104]. King appealed this ruling. [ECF No. 105].

On July 31, 2019, the Eleventh Circuit vacated and remanded the District Court's

decision granting AGS's motion for judgment on the pleadings and vacated the cost judgment as part of its remand.[1] [ECF No. 107]. Following the reopening of the case, AGS filed a motion for summary judgment [ECF No. 129] and King filed a motion for partial summary judgment [ECF No. 130]. The District Court granted King's motion for partial summary judgment in part on AGS's affirmative defenses numbered 2, 3, 4, 5, 12, and 15. [ECF No. 192]. The District Court also granted AGS's motion for summary judgment in part and entered judgment in AGS's favor on King's national origin discrimination claim. [ECF No. 157].

The case proceeded to trial on November 29, 2021 on King's remaining two claims for discrimination based on race and discrimination based on religion. [ECF No. 225]. After a four-day trial, the jury returned a verdict in favor of AGS as to both of King's claims. [ECF No. 231]. Final Judgment was entered in AGS's favor the following day. [ECF No. 232].

As the prevailing party, AGS again seeks an award of costs.

## II.    Legal Standard

Absent a federal statute, civil procedure rule, or order to the contrary, a prevailing party is entitled to an award of its costs. Fed. R. Civ. P. 54(d)(1). The prevailing party must file a bill of costs, adhering to the guidelines outlined in Local Rule 7.3(c), which specifically references 28 U.S.C. § 1920. Under § 1920, the following

---

[1]     *King v. Akima Global Servs., LLC*, 775 F. App'x 617 (11th Cir. 2019).

3

costs are taxable against the losing party:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Although a prevailing party is entitled to taxable costs, the court can still exercise discretion in awarding the costs that § 1920 enumerates. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987). When challenging whether costs are taxable, "the losing party bears the burden of demonstrating that a cost is not taxable, unless the knowledge regarding the proposed cost is within the exclusive knowledge of the prevailing party." *Monelus v. Tocodrian, Inc.*, 609 F. Supp. 2d 1328, 1333 (S.D. Fla. 2009) (internal citations omitted). Nevertheless, the court is still limited to taxing only those costs specifically authorized by statute. *E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000) (citing *Crawford Fitting Co.*, 482 U.S. at 445).

There must be a legal basis permitting an award of costs beyond those enumerated by § 1920. The basis can come from a contract, *see Yellow Pages Photos, Inc. v Ziplocal, LP*, 846 F.3d 1159, 1165-66 (11th Cir. 2017), or from a statute or rule. *See, e.g., Chow v. Chak Yam Chau*, 640 F. App'x 834, 836 n.4 (11th Cir. 2015) (acknowledging that

4

the Florida Deceptive and Unfair Trade Practices Act permits an award of non-taxable costs); *Michael Titze Co., Inc. v. Simon Prop. Grp., Inc.*, No. 3:08CV463-WS, 2010 WL 11519455, at *1 (N.D. Fla. Oct. 28, 2010) (acknowledging that Florida's offer of judgment statute permits an award of nontaxable costs). Under Local Rule 7.3(a)(2), it is the movant's burden to identify the "statute, rule, or other grounds" entitling it to the award. Local Rule 7.3(a)(2).

## III.    Analysis

### A.    AGS's Motion for Taxable Costs

AGS seeks $12,519.18 in allegedly taxable costs. [ECF No. 245]. Specifically, AGS requests recovery of its filing fee ($400.00), deposition and trial transcript expenses ($4,151.44), witness travel ($1,885.30), and copying costs ($6,082.44). *Id.* The merits of taxing some of these costs were previously addressed in the Undersigned's earlier Report and Recommendations and the Order adopting the Report and Recommendations. [ECF Nos. 100; 104]. In that Order, AGS was awarded $3,326.40 in taxable costs, recovering its filing fee ($400.00), deposition costs ($2,859.40), and copy costs ($67.00). [ECF Nos. 100; 104].

King does not object to the previously awarded costs being awarded again. [ECF No. 246]. However, he does object to certain costs incurred since the first award and argues that a reduction is warranted in all of AGS's listed categories except for the filing fee. *Id.* King contends that many of AGS's requested costs are unreasonable and that

AGS should be awarded only $400.00 for the removal fee, $2,859.40 in deposition and trial transcript expenses, $1,258.06 in witness costs, and $900.20 in copy costs. *Id.*

The Undersigned will address each of these categories in turn.

### i. Removal Fee

AGS seeks to tax $400.00 for the cost of removing the case to federal court. [ECF No. 29-1, p. 3].

Removal fees are recoverable costs under 28 U.S.C. § 1920(1). *See Thermoset Corp. v. Bldg. Materials Corp. of Am.*, No. 14-60268, 2015 WL 11197752, at *2 (S.D. Fla. Dec. 29, 2015) ("A removal fee is unquestionably a fee of the clerk." (internal quotation omitted)). This cost was granted previously, and King does not object.

Therefore, the Court **respectfully recommends** that the District Court grant AGS's request and award it **$400.00** for the removal fee.

### ii. Deposition and Trial Transcript Costs

"The taxation of deposition costs is authorized by § 1920(2)." *W&O, Inc.*, 213 F.3d at 620. The factual question of whether specific deposition and transcript costs are taxable depends on whether the deposition was "necessarily obtained for use in the case." *Id.* at 621; *see also Rodriguez v. Marble Care Int'l, Inc.*, 862 F. Supp. 2d 1316, 1320 (S.D. Fla. 2012). If a deposition cost was incurred merely for convenience, to aid in thorough preparation, or for purposes of investigation only, then the cost is not recoverable. *W&O, Inc.*, 213 F.3d at 620 (internal citations omitted); *see also Rodriguez v.*

6

*M.I. Quality Lawn Maint., Inc.*, No. 10-21031-CIV, 2012 WL 664275, at *4 (S.D. Fla. Feb. 9, 2012). It is the losing party's burden to show that "specific deposition costs . . . [are] not necessary for use in the case[.]" *Monelus*, 609 F. Supp. 2d at 1337 (citing *W&O, Inc.*, 213 F.3d at 621).

This Court previously awarded AGS $2,859.40 in deposition costs for the depositions of King, Laura Mitchell, Karen Sinanan, and Michael Burklow. King does not object to the reimposition of this cost award.

The only difference between AGS's current request and its earlier request is the $1,292.04 spent transcribing King's trial testimony. AGS alleges that this cost was necessarily incurred because AGS felt it was "necessary to presenting [King's] contradictory testimony in a PowerPoint presentation during the closing argument at the conclusion of the trial." [ECF No. 245]. King does not dispute that AGS referenced the trial transcript during its closing but claims that "there is no reason why [AGS's] trial attorneys could not rely on their own recollection regarding King's testimony." [ECF No. 246].

Although litigants are not entitled to the costs associated with expedited trial transcripts as a matter of course, certain situations may justify the necessity of the expense. *See Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1226 (11th Cir. 2002) (affirming award of trial transcript costs due to the "length and complexity" of antitrust case alleging violations of the Sherman Act by suppressing the price for equity

ownership interests in beer distributorships). However, when trial transcripts are not "indispensable" and are merely "for the convenience of [counsel]" awarding the cost is "an abuse of discretion." *In re Nissan Antitrust Litig.*, 577 F.2d 910, 918 (5th Cir. 1978).[2]

AGS argues that this expense was necessarily incurred because "[t]he jury was not permitted to take notes," [ECF No. 245], and it "reasonably believed the differences in [King's] testimony and [his] arguments concerning the testimony may have changed or limited the jury's ability to keep track of [King's] admissions." [ECF No. 247]. In King's view, however, this was an unnecessary expense because "[t]his was a straightforward alleged employment discrimination case . . . [t]here were no complex legal or factual issues . . . [t]he trial was []short . . . [and] [t]he witness presentation phase of the trial was less than three days." [ECF No. 246].

Courts regularly deny requests for trial transcripts when the trial is short and the party requesting the transcript had multiple attorneys present. *See, e.g., Mizrahi v. Yamaha Motor Corp.*, U.S.A., No. 17-24484-CIV, 2019 WL 5265298, at *1 (S.D. Fla. Sept. 23, 2019) (declining to award costs for daily transcripts when the "witness presentation phase of the trial lasted only five days; and the parties already had the benefit of substantial transcribed testimony of multiple witnesses"); *Kearney v. Auto–Owners Ins. Co.*, Case No. 8:06–cv–595–T–24TGW, 2010 WL 1856060, at *4 (M.D. Fla. May 10, 2010)

---

[2]     In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down before the close of business on September 30, 1981. *Id.* at 1209.

(finding defendant was not entitled to recover costs for trial transcripts where the trial lasted eight days and the issues were not complex); *Habersham Plantation Corp. v. Art & Frame Direct, Inc.*, 2011 WL 6138740,*2–3 (S.D. Fla. Dec. 9, 2011) (disallowing cost of daily trial transcripts, as trial was relatively short and counsel could have relied on their own recollection for preparation).

AGS attempts to distinguish these cases by highlighting the fact that it requested only *King's* transcript (as opposed to the entire trial transcript) and used the transcript during its closing. Certainly, every party would prefer to present a transcript during closing rather than their own recollection of the testimony, but that does not make the transcription of the testimony *necessary*. AGS already had a transcript of King's testimony from his deposition. Although AGS highlights facts that it believes were paramount to its closing argument, there is no factual or legal backing for the proposition that jurors would struggle to remember testimony from three days prior in a relatively straightforward civil case.

The situation before the Undersigned is substantially different than those where courts have awarded costs for trial transcripts based on necessity. *Sensormatic Elec. Corp. v. Tag Co. US*, 2009 WL 3208649, at *4 (S.D. Fla. Oct. 2, 2009) (adopting magistrate judge's finding that daily trial transcripts were necessary "where trial lasted nearly four weeks, involved complex issues and expert testimony"); *Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 865 F. Supp. 2d 1159, 1164 (S.D. Fla. 2011) (awarding cost of daily

trial transcripts where bench trial spanned several months, daily transcripts were used by both parties throughout trial, and court referred to daily transcripts in findings of fact). In the Undersigned's view, the mere fact that AGS *wanted* to use the transcript during its closing and actually used the transcript during its closing is insufficient to move the needle from convenience to necessity. This cost should not be taxed.

Accordingly, the Undersigned **respectfully recommends** the District Court **grant in part** AGS's request for transcript costs and award it **$2,859.40** for the costs associated with the deposition transcripts and **deny** AGS's request to tax the cost of obtaining King's trial testimony, a reduction of $1,292.04.

###### iii.  Witness Fees and Costs

AGS seeks to tax $1,885.30 in costs associated with the travel and lodging for three witnesses who testified at trial: (1) Burklow -- $740.79; (2) Mitchell -- $811.98; and (3) Jones -- $322.52. [ECF No. 245]. King does not object to the costs associated with Burklow and objects in part to the costs associated with Mitchell and Jones. [ECF No. 246].

Generally speaking, a witness' travel costs are recoverable provided the party requesting travel costs supplies detailed documentation of the expenses incurred. *James v. Wash Depot Holdings, Inc.*, 242 F.R.D. 645, 651 (S.D. Fla. 2007). Although recoverable, taxation of these costs is limited by the parameters of 28 U.S.C. § 1821. Section 1821 permits the taxation of airfare by common carrier, mileage costs as prescribed by the

Administrator of General Services, miscellaneous fees for tolls or taxicab fares between carrier terminals and places of lodging, and a subsidence allowance at the government rate for witnesses for whom an overnight stay is required. 28 U.S.C. § 1821(c)-(d).

AGS seeks to tax $740.79 in costs for Burklow arising from his lodging ($384.00), airfare ($132.79), meals ($100.23), Uber charges ($78.59), and airport parking costs ($45.00). AGS provides corroborating documentation for all of Burklow's incurred expenses. [ECF No. 245-3]. Because King does not object to the imposition of these costs and the requested costs all fall within the limits of Section 1821, the Undersigned **respectfully recommends** that the District Court award AGS $740.79 in costs associated with Burklow's witness fees.

AGS also seeks to tax the witness fees associated with Mitchell, who served as AGS's corporate representative during the trial but who was also called as a witness by King. In his response, King divides the $811.98 in witness fees associated with Mitchell into the following categories: "(a) lodging - $384.00 (for two nights); (b) travel - $219.24 for 378 miles of driving between Rockledge and Miami; (c) meals- $69.00; (d) Uber - $29.00; and (e) parking - $110.74." [ECF No. 246]. King challenges AGS's request for one night of lodging ($192), the $29.00 Uber ride, and the $110.74 in hotel parking. The Undersigned will address each of these objections in turn.

King concedes that, although a party usually may not recoup witness fees for its corporate representative, if the corporate representative also acts as a testifying witness,

11

then the associated fees may be taxed. *Santana v. RCSH Operations, LLC*, No. 10-61376-CIV, 2012 WL 3779013, at *4 (S.D. Fla. Aug. 31, 2012) ("[C]ourts differentiate between time a corporate representative spends testifying versus days he or she spends advising trial counsel."). King argues that because Mitchell testified on only one day, AGS should be able to tax only a single night's lodging. In support of this stance, King cites *Bldg. Four Shady Oaks Mgmt. LP v. Fed. Deposit Ins. Corp.*, No. 3:10-CV-970-O, 2012 WL 13019601, at *1 (N.D. Tex. Mar. 13, 2012), which allowed the prevailing party to recoup one night of hotel expenses when the corporate representative testified on only one day of a five-day trial.

Certainly, there may be situations where it is appropriate to tax only a single night's lodging when a corporate representative testifies as a witness. However, courts in this District have also found it appropriate to tax two nights of lodging when a corporate representative testified on only one day. *Santana*, 2012 WL 3779013, at *4. The Undersigned finds that this is the better approach.

Mitchell was called during King's case-in-chief. As such, it was impossible for her to know when exactly she would be called as a witness. Because she lived more than 180 miles away, it would not be unreasonable (if she were not also a corporate representative) to book two nights at a hotel to ensure that she could be available to testify if called early in the morning and would not have to make a lengthy late trek back to her home city the night she finished testifying.

King also objects to the $29.00 Uber fee Mitchell incurred traveling from her hotel to the courthouse. In his objection, King notes that the distance of this Uber ride was 1.2 miles, and he compares it to the $41.78 Uber fee Burklow incurred traveling from the airport to his hotel, which King claims is a much greater distance. AGS avers that Mitchell "could not set her own Uber fare at peak travel time" and King's assumption that she could walk the short distance does not fairly acknowledge the realities of Miami's weather. [ECF No. 247].

The Undersigned agrees with King that the Uber charge is unreasonable. Although AGS attributes the expense of the Uber fare to "peak travel time," a review of the receipt reveals that the trip fare was only $9.79 and Mitchell more than doubled the price by reserving her ride early ($3.00 reservation fee and $6.21 booking fee) and leaving a $10.00 tip. [ECF No. 245-3, p. 52]. Further, the Undersigned notes that, unlike a witness who may have flown in from out-of-town, Mitchell had access to her vehicle and could have driven.

Moreover, there are alternative grounds that justify denying AGS's request to tax this cost. 28 U.S.C. § 1821 authorizes "taxicab fares between *places of lodging and carrier terminals*." 28 U.S.C. § 1821(3) (emphasis added). Mitchell's Uber ride was between her place of lodging and the courthouse. Thus, the Undersigned finds that this cost is not encompassed by section 1821 and should not be taxed.

King's final objection concerns the $110.74 in hotel parking. In support of this

13

objection, King cites cases declining to award witness fees arising from *courthouse* parking. The plain reading of Section 1821 authorizes recovery of a witness' "parking fees (upon presentation of a valid parking receipt)." 28 U.S.C. § 1821(3). Therefore, the Undersigned finds that this cost *is* taxable.

AGS's final request concerns witness fees associated with Jones, a witness based out of Fort Lauderdale. For this witness, AGS seeks to tax $332.53 in costs: (a) $33.41 for 56.8 miles driving from Fort Lauderdale to Miami and back; (b) $192.00 for one night of lodging; (c) $51.75 for food; and (d) $55.37 for parking. King objects to all but the cost of mileage. [ECF No. 245].

AGS admits that Jones "could have conceivably driven from her home to Miami to appear for trial." [ECF No. 247]. However, AGS claims that because it could not predict when Jones would testify, "[h]ad Ms. Jones not stayed overnight, the often-clogged South Florida highway system could have caused her to be tardy and potentially caused her to sit at the courthouse for excessive amounts of hours waiting to be called as a witness." *Id.* Essentially, AGS argues necessity because South Florida traffic is sometimes congested.

In King's view, these expenses were entirely avoidable. He notes that another witness traveled to Miami from Coconut Creek (which is further away from Miami than Fort Lauderdale) and did not require an overnight stay in Miami, meals, or overnight parking. He refers to the 28.4-mile trip from Fort Lauderdale to Miami as "short" and

claims Miami is "not so far removed from [Jones'] residence that she [was] prohibited from returning the same day to Fort Lauderdale." [ECF No. 246].

The Undersigned agrees with King. The query is not whether returning home the same day is merely inconvenient for the witness or whether the witness might need to plan ahead and possibly wait a few hours in the courthouse (as opposed to waiting a few hours in a hotel room). The question, instead, is whether "the place of attendance . . . is so far removed from the residence of such witness as to *prohibit* return thereto from day to day." 28 U.S.C. § 1821(d)(1) (emphasis added). Many South Florida attorneys practice in both Fort Lauderdale and Miami -- usually maintaining a residence in only one of those cities. Yet, those attorneys do not require a hotel stay every time they must appear in court in the city outside the one in which they live. Certainly, the traffic on I-95 may lengthen the journey between the cities but it is not so cumbersome as to prevent a person from returning to their residence.

Accordingly, the Undersigned **respectfully recommends** the District Court award AGS $33.41 for Jones' mileage costs and **deny** its other requests.

In conclusion, the Undersigned **respectfully recommends** the District Court award AGS **$1,557.18** in witness fees ($328.12 less than the requested amount).

### iv.  Copying Costs

AGS's final request is for $6,082.44 in copying related costs. AGS's copy costs fall within the following distinct categories: (1) removal copy costs ($67.00); (2) King's

property records ($458.00); (3) impeachment documents for three witnesses ($399.40); and (4) trial binder expenses ($5,158.04). King has no objection to the removal copy costs but complains that a partial or total reduction is warranted in the remaining categories.

Copying costs are recoverable if the copies were "necessarily obtained for use in the case." 28 U.S.C. § 1920(4); *W&O*, 213 F.3d at 622–23. The party requesting taxation of costs must present evidence "regarding the documents copied including their use or intended use." *Cullens v. Georgia Dept. of Trans.*, 29 F.3d 1489, 1494 (11th Cir. 1994). However, costs associated with binders, tabs, and folders are generally nonrecoverable and are merely for the convenience of counsel. *Watson v. Lake Cnty.*, 492 F. App'x 991, 997 (11th Cir. 2012) ("§ 1920 does not authorize recovery of costs for . . . binders, tabs, and technical labor."); *Awwad v. Largo Med. Ctr., Inc.*, No. 8:11-CV-1638-T-24, 2013 WL 6198856, at *6 (M.D. Fla. Nov. 27, 2013) (denying request to award costs associated with "scanning, binders, hole-punching, tabs, CDs, ESI file conversions, OCR, break sheets, mileage, and other non-copying charges" as the costs were "for the convenience of counsel").

AGS seeks to recover $67.00 for obtaining copies of the documents necessary to remove this case to federal court. The Court previously awarded these costs [ECF Nos. 100; 104] and King does not object to their reimposition. Thus, no reduction is warranted in this category.

AGS next seeks to recover $458.00 to obtain certified copies of King's property

16

and trusts records. [ECF No. 245]. AGS claims that these copies were necessary for impeachment purposes on issues of King's damages and qualifications. Specifically, AGS claims that the documents could establish King's income during the years after he was not hired and whether King could pass an ICE credit check. King argues that these documents were not relevant to the case because they were not part of any of his claims or AGS's defenses.

AGS has failed to establish the necessity of these documents. AGS relies on general relevancy arguments and fails to indicate which specific documents were relevant for which specific purposes. It is not the Court's obligation to parse through the records to glean the evidentiary relevance of each copy. In reaching this conclusion, the Undersigned also notes that the Court denied AGS's request to judicially notice the documents [ECF No. 220] and AGS ultimately did not use any of the documents at trial. Thus, even if AGS persuaded the Court as to the relevance of the *specific* documents, there is no guarantee the documents would have even been admissible. For these reasons, the Undersigned **respectfully recommends** that the District Court **reject** this request.

AGS also seeks to tax $399.40 in costs incurred obtaining impeachment records for three of King's potential witnesses: Derrick Charleston, Garfield Thompson, and Raymond Hicks. According to AGS, the acquired documents all served to demonstrate that these witnesses were litigious and had also brought "baseless" discrimination

17

claims against Krome operators following adverse employment action. King objects to only the costs of Hicks' records ($181.20).

King says that this cost should not be taxed because Hicks was not listed on his final trial witness list and, thus, the impeachment exhibits were unnecessary. AGS counters by stating that King informed it that Hicks might be called as a rebuttal witness. King does not dispute this claim and instead argues that his "mention of Hicks possibly being a rebuttal witness is too slim of a reed to justify taxing costs for potential impeachment exhibits for a potential rebuttal witness." [ECF No. 246].

As AGS correctly notes, it "needed to be prepared to impeach Mr. Hicks if he testified . . . and could not wait to see whether [King] called Mr. Hicks to *then* prepare for his testimony." [ECF No. 247] (emphasis added). King's objection to the necessity of this cost is limited to uncertainty over whether Hicks would testify. The Undersigned finds this insufficient to overcome AGS's proffer of relevancy and necessity. Accordingly, the Undersigned **respectfully recommends** that the District Court **award** AGS the full $399.40 in costs incurred obtaining the impeachment records for the three witnesses.

AGS's final copy related request concerns $5,158.99 in costs to produce exhibit notebooks for the Court and to have copies of exhibits available at trial. In King's response, he itemizes these costs in the following graph:

| Copies (B&W and Color) | 20,847 pages | $3,193.26 |

| Tabs | 834 tabs | $700.40 |
| Binders | 27 binders | $502.77 |
| Redwells/Manila Folders | 140 | $89.06 |
| Miscellaneous Fee (for weekend work rate on 11/28/21 | | $335.10 |

[ECF No. 246]. King argues that these costs are excessive, unnecessary, and unrecoverable; he claims that AGS should be limited to taxing $615.00, which is the amount he spent making backups of 4,100 documents at $0.15 a page. *Id.* AGS avers that these costs cannot be considered excessive because they were incurred "in conjunction with [a] [c]court Order." [ECF No. 247].

Although the costs AGS seeks to tax are usually not permitted under 28 U.S.C. § 1920, they are recoverable when incurred to comply with a court order. *Procaps v. Patheon Inc.*, No. 12-24356-CIV, 2016 WL 411017, at *7 (S.D. Fla. Feb. 2, 2016) ("[C]osts for binders, folders, labels and related items are reimbursable when used in conjunction with complying with an order specifically requiring them."). Before trial, the District Court issued an Order on Trial Procedures, which required, in relevant part:

> In preparation for trial, counsel shall meet and prepare an Exhibit Notebook (or binder), consisting of three (3) divisions. The first division shall contain the parties' joint exhibits; the second division shall contain Plaintiff's exhibits; and the third division shall contain Defendant's exhibits. Those exhibits which are joint shall not be repeated in the second or third divisions of the notebook. Each division shall be clearly and adequately designated (tabbed) and each exhibit appropriately labeled. The first page after each tab shall be a face page identifying the exhibit by number or letter and type (i.e., Joint, Plaintiff's, or Defendant's). The

Exhibit Notebook shall also include the Exhibit Lists. The parties shall include in the Exhibit Notebook only those exhibits that are considered absolutely necessary. The failure to include any particular exhibit in the Notebook, however, shall not preclude admission of any exhibit that was properly listed on the party's pretrial exhibit list.

\*\*\*

On the first day of trial, counsel shall each have a copy of the Exhibit Notebook and shall provide a copy to the Court.

[ECF No. 187, pp. 1-2].

AGS points to this Order as justification for the costs associated with the following items: one original binder containing the joint exhibits and five additional copies (one for King, the Court, the Clerk, defense attorney Sherril Colombo, defense attorney Stefanie Mederos, and for witness use); one original binder containing King's exhibits and six additional copies (for all the same parties, plus one extra); and two original binders containing AGS's exhibits and six additional copies of each (for all the same parties, plus one extra). In sum, AGS created 27 binders: six joint exhibit binders, seven King exhibit binders, and fourteen defense exhibit binders.

As King correctly notes, this production goes far beyond the parameters of the Court's Order. The Court's Order required the production of a single binder divided into three sections and an additional copy for each party (i.e., three total binders). AGS argues that its increased level of production was necessary because "Plaintiff's counsel refused to work with [AGS's] counsel on [the joint] Notebook." [ECF No. 247].

Even if King's counsel's refusal to cooperate is accurate, it still does not explain

why AGS determined that the Order required as necessary binders for each defense attorney, binders for the clerk, binders for witnesses, and extra binders. Assuming that the exhibits were so voluminous so as to justify requiring one binder for joint exhibits, one binder of King's exhibits, and two binders for defense exhibits, this would still require only twelve binders to comply with the Court's Order.

Anything beyond that amount is merely for the convenience of counsel. Neither party has offered specific information about the contents of each binder (e.g., how many tabs were used in each, how many pages, size of the binder, etc.). Thus, the Undersigned is unable to determine *exactly* which expenditures were necessary. Because of that, reasonable calculations and estimates will have to be made. In separating the costs which were necessarily incurred to comply with the Court's Order and those which went beyond the Court's Order and were for convenience of counsel, the Undersigned will use the approach that the pages and tabs were evenly divided between the binders and that the binders and contents necessary to comply with the Court's Order were all the least expensive version of the product.

Using the above-mentioned method, the Undersigned will use the following arithmetic method: because it took 20,847 pages for AGS to create 27 binders, AGS would have needed only 9,265 pages to sufficiently produce the 12 necessary binders. Likewise, because AGS required 834 tabs to adequately divide 27 binders, then it would have needed only 370 tabs to separate the documents in 12 binders. During its

production, AGS paid $0.12 a page for black and white copies [ECF No. 245-3, p. 39], $0.40 per tab [ECF No. 245-3, p. 37], and $8.99 per 1 ½ inch binder [ECF No. 245-3, p. 36].

Using these rates, which are the lowest rates in each category, AGS should be awarded $1,111.80 for copies, $148.00 for tabs, and $107.88 for binders. Additionally, because AGS paid a 7% sales tax on these costs, [ECF No. 246 (conceding that King's breakdown "exclude[s] tax")], then these costs should reflect the 7% sales tax, which increases the total amount to $1,463.42.

AGS's request to tax its costs for redwell and manila folders should be denied. Nothing in the Court's Order required AGS to obtain these items.

The final cost request surrounds a weekend surcharge. AGS argues that the fee for working on the weekend was necessarily incurred because the binders were created between Thanksgiving weekend and the trial date. The Undersigned finds that this cost was also for counsel's convenience. The Court issued the Order requiring the creation of binders on October 21, 2021. [ECF No. 187]. Further, the parties began submitting their pretrial stipulations on November 4, 2021.

The fact that AGS chose to employ an outside entity to create these binders over the Thanksgiving holiday rather than earlier in the month does not make this a necessary expense. *See e.g., Watson*, 492. F. App'x at 997 ("§ 1920 does not authorize recovery of costs for . . . technical labor."); *Siegmund on behalf of Linkwell Corp. v. Xuelian*

*Bian*, No. 12-CV-62539, 2019 WL 2267205, at *3 (S.D. Fla. Mar. 11, 2019), report and

recommendation adopted, No. 12-CV-62539, 2019 WL 2267137 (S.D. Fla. Mar. 28, 2019)

("[C]osts for surcharges . . . are incurred for convenience of counsel.").

Accordingly, the Undersigned **respectfully recommends** that the District Court

award AGS **$1,463.42** in binder/exhibit related costs ($3,694.62 less than the requested

amount).

v. <u>Interest</u>

AGS's request for interest is well supported by the law. *BP Prod. N. Am., Inc. v.*

*Youssef*, 296 F. Supp. 2d 1351, 1355 (M.D. Fla. 2004) ("By force of Section 1961, a

judgment bears interest at the statutory rate, even without a demand by the plaintiff or

an order of the court."). Indeed, King offers no objection to its imposition.

Thus, the Undersigned **respectfully recommends** that the District Court impose

interest from the date of the costs judgment.

vi. <u>Conclusion</u>[3]

In conclusion, the Undersigned **respectfully recommends** that the District Court

award AGS **$6,686.40** in taxable costs ($5,832.78 less than the requested amount) plus

interest from the date of the costs judgment.

---

[3]   AGS makes a cursory fallback argument that any unawarded costs should be
awarded as non-taxable costs under the Florida Civil Rights Act. AGS offers no
substantive argument on this issue. Because the Undersigned is recommending that
AGS's substantive motion for non-taxable costs be denied, I will not address AGS's
argument on this issue in the context of its request for taxable costs.

B.     AGS's Motion for Non-Taxable Costs

In addition to seeking taxable costs, AGS also seeks to recover $14,517.56 in non-taxable costs. [ECF No. 248]. AGS claims that it is entitled to non-taxable costs as the prevailing party under § 760.11(5), Florida Statutes, the Florida Civil Rights Act ("FRCA"). *Id.* King claims that AGS does not meet the requirements for non-taxable costs because "[t]o award non-taxable costs under the FCRA, the Court must find that [his] case was frivolous, unreasonable, or groundless (just as the Court would have to find in a Title VII case)." [ECF No. 250]. AGS counters that it need not show frivolity to recoup its costs, as the plain reading of the statute dictates otherwise.

AGS quotes a piecemeal sentence from the FCRA in support of its position. This type of analysis runs contrary to one of the fundamental principles of statutory interpretation, which is that the language of a statute is not to be read in isolation. *United States v. Morton*, 467 U.S. 822, 828, 104 S. Ct. 2769, 2773, 81 L. Ed. 2d 680 (1984) ("We do not, however, construe statutory phrases in isolation; we read statutes **as a whole**.") (emphasis added)); *In Re Shek*, 947 F.3d 770, 776–77 (11th Cir. 2020) ("Statutory provisions are not written in isolation and do not operate in isolation, so we cannot read them in isolation."). Here, the full relevant portion reads:

> In any action or proceeding under this subsection, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs. It is the intent of the Legislature that this provision for attorney's fees be interpreted in a manner consistent with federal case law involving a Title VII action.

Fla. Stat. § 760.11(5).

According to King, the second sentence -- requiring an interpretation consistent with Title VII -- means that AGS must establish that his claim was frivolous in order to be eligible for non-taxable costs. [ECF No. 250 (citing *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412 (1978)]. In *Christiansburg*, the Supreme Court held that a plaintiff in a Title VII case "should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." 434 U.S. at 422. AGS does not disagree with this principle; instead AGS argues that the principle applies to only the issue of attorney's fees, not the issue of non-taxable costs.

In AGS'S view, the attorney fee provision of the FRCA is a "discrete subpart of an award of non-taxable costs." [ECF No. 251]. It argues that a plain reading of the statute supports this interpretation. And, as AGS correctly notes, "[w]hen the statute is clear and unambiguous, [Florida] courts will not look behind [its] plain language for legislative intent." *Robbins v. Garrison Prop. & Cas. Ins. Co.*, 809 F.3d 583, 586 (11th Cir. 2015) (citing *Daniels v. Fla. Dep't of Health*, 898 So.2d 61, 64 (Fla. 2005) (alterations in original).

Although AGS and King each cite cases which they urge as support for their position on the necessity of a frivolity analysis, the Undersigned need not look beyond the language of the statute to reach the conclusion that AGS is not entitled to non-

taxable costs under the FCRA. The plain language of the FCRA establishes only a basis for an attorney fee award.

Unlike attorney's fees -- which are impermissible without an express statutory authorization to the contrary, *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) -- a prevailing party in Florida is automatically entitled to taxable costs. *Jones v. ETS of New Orleans, Inc.*, 793 So. 2d 912, 915 (Fla. 2001) ("A prevailing party is entitled to recover from the losing party all his or her legal costs and charges which shall be included in the judgment. The general rule is that only taxable costs are to be included in any cost judgment." (internal quotations and citations omitted)).

The statute upon which AGS relies states that the Court "may allow the prevailing party a reasonable attorney's fee as part of the costs." Fla. Stat. § 760.11(5). Nothing in this sentence can be read to expand the breadth of the potential costs award; instead, it merely permits attorney's fees as part of the costs. Indeed, the following sentence confirms this interpretation: "It is the intent of the Legislature that *this* provision for attorney's fees be interpreted in a manner consistent with federal case law involving a Title VII action." *Id.* (emphasis supplied).

The Legislature's use of the word "this" acts as a determiner to the singular noun "provision."[4] *Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019) (words "are to be given the

---

[4]      This: being the person, thing, or idea that is present or near in place, time, or thought or that has just been mentioned. THIS, https://www.merriam-webster.com/dictionary/ this (last visited May 20, 2022).

meaning that proper grammar and usage would assign them," and the "rules of grammar govern statutory interpretation unless they contradict legislative intent or purpose" (quoting A. Scalia & B. Garner, Reading Law, The Interpretation of Legal Texts 140 (2012) (internal quotation marks omitted))). The noun "provision" is further clarified by the phrase "for attorney's fees."

Thus, grammatically, the second sentence reveals the first sentence's limited purpose. The attorney's fees provision is not, as AGS argues, a discrete subpart of a more-encompassing grant of entitlement -- it is the singular function of this sentence from the FCRA.

Accordingly, the Undersigned finds that the FCRA does not provide independent grounds to recover non-taxable costs. Instead, it enables a party to seek attorney's fees (guided by the limits of Title VII) in addition to costs otherwise allowed under the law. AGS has offered no other statutory authority entitling it to non-taxable costs.

Because AGS has not shown that the FCRA or any other legal provision permits it to recover non-taxable costs from the losing party, the Undersigned **respectfully recommends** that the District Court **deny** AGS's Motion to Recover Non-Taxable Costs.

**IV.    Conclusion**

For reasons discussed, the Undersigned **respectfully recommends** that the District Court **grant in part** AGS's motion to tax costs and award AGS **$6,686.40** in

taxable costs, plus interest ($5,832.74 less than the requested amount).

The Undersigned also **respectfully recommends** that the District Court **deny** AGS's motion for non-taxable costs.

## V.    Objections

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, May 24, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>**Copies furnished to:**</u>
The Honorable Jose E. Martinez
All Counsel of Record